FOOD SUPPLY CO., Respondent, v. PENNINGTON COUNTY, Appellant.

(236 N. W. 284.)

(File No. 7078. Opinion filed April 13, 1931.)

*Turner M. Rudesill,* State's Attorney, of Rapid City, for Appellant.

*Joseph Coursey,* of Rapid City, for Respondent.

WARREN, J. The board of county commissioners, acting as a board of equalization for the county of Pennington, S. D., raised the assessed valuation of goods and merchandise belonging to the plaintiff from $4,950 to $15,000. Plaintiff, feeling aggrieved, appealed to the circuit court of said county. During the trial in the circuit court, the parties stipulated to certain facts. Said stipulation is, in substance, as follows: That about the 1st day of May, 1929, the plaintiff was assessed under items of goods and merchandise by the city assessor of Rapid City, a municipal corporation, for the sum of $4,950. The board of city commissioners did not change the assessment. That on the 13th day of July, 1929, notice was sent to plaintiff requiring it to show why the assessment should not be raised. On the 16th of July, 1929, the board of equalization of Pennington county met, and, over the protest of the plaintiff, raised the assessment on goods and merchandise from $4,950 to $15,000. The minutes of the proceedings were reduced to writing and change made effective. The plaintiff perfected the preliminary notice of appeal, and did all things required to bring said matter before the circuit court. One of the commissioners of Pennington county was called as a witness, who testified that he was a member of the board of equalization of said county, and that, while sitting as a member of the board of equalization, he had occasion to consider the assessment of the Food Supply Company as to value and size of the same; that he made an examination of certain stocks of goods, being that of Siedenburg & Son, Wildman's Grocery, and Charles P. Tittle, as to quantity and comparative value. The plaintiff objected upon the ground that it was immaterial, irrelevant, and incompetent, and that the county board of equaliation was without jurisdiction and without authority of law to inquire into the valuation or quantity of the goods and merchandise assessed by the appellant, as the assessment of the said goods and merchandise had been theretofore reviewed and equalized and determined by the city commissioners of Rapid City, S. D., which objection was sustained. An offer of evidence was then made, which we consider pertinent to the disposal of this matter, which was, in substance, as follows:

"At this time Pennington County, South Dakota, offers to prove that on the assessment lists for the year 1929 the stock of goods and merchandise of. J. A. C. Siedenburg & Son was as-

sessed for $4,500.00; that the stock of goods and merchandise of S. M. Wildman was assessed at $5,800.00; and that the stock of merchandise of C. P. Tittle was assessed at $4,000.00; that said stocks of merchandise are grocery stocks, and are of the same class of merchandise as the stock of merchandise assessed to the Food Supply Company; that the assessments as aforesaid were the true value of the stocks of merchandise of the said J. A. C. Siedenburg & Son, S. M. Wildman and C. P. Tittle; that on the first day of May, 1929, said Food Supply Company had in its store in Rapid City, Pennington County, South Dakota, in excess of three times in quantity and value the stocks and merchandise in either of the three stores mentioned, viz.: J. A. C. Siedenburg & Son, S. M. Wildman or C. P. Tittle; that said four stores are stores of the same general class, located in the downtown district of the City of Rapid City, South Dakota, and in the same taxing district, and that on the first day of May, 1929, as aforesaid, the Food Supply Company has in excess of $15,000.00 worth of merchandise, consisting of groceries, in its said store in Rapid City, South Dakota."

"By the Court: Am I to understand that these stocks of merchandise, referred to in the offer of proof, are stocks of groceries and food stuffs and supplies of generally the same character, the stores in question handling in some instances the same food stuffs, of the same brands, and in some instances food stuffs of different brands, and in some instances greater varieties of food stuffs, which in some instances and from time to time may be handled in one of the stores and not in others, but on the whole being grocery and food stuff supplies of a generally similar character?

"By Mr. Rudesill: Yes, your Honor.

"By Mr. Coursey: To which offer of proof the appellant objects on all grounds stated in its objection to the preceding question asked of the witness."

Thereafter the court made and entered its findings of fact and conclusions of law, a judgment and decree to the effect that the board of county commissioners, or acting as a board of equalization, was without authority of law and jurisdiction to raise said assessed valuation of said goods. The appellant, Pennington county, has assigned the ruling of the court as to the admissibility of

the evidence and the offer of proof and the making of the findings, conclusion, and judgment as error. The assessor was charged with the duty of ascertaining the extent and value of the properties to be listed for taxation. After that duty was performed, the local board affirmed his acts and in this instance the board consisted of the board of city commissioners of Rapid City constituting the board of equalization, who were charged with the duties of reviewing the acts of the assessor. Thereafter the county board of equalization, consisting of the county commissioners of Pennington county, attempted to take jurisdiction, and by their act raised the assessment on the goods and merchandise from $4,950 to $15,000. Upon what authority did they act? Upon examination of the statute for authority, we find section 6729 as to procedure of county board of equalization in organized territory; a portion of this section dealing with this specific subject is as follows:

"§ 6729. * * * It shall raise or lower, if necessary, each class of property upon a percentage basis covering such class as a whole within such assessment district; provided, however, that it shall be the duty of such board to place upon the books of any taxing district within the county any property that may have been omitted by error or neglect of the assessor or board of equalization of the local assessment district, and it may correct mistakes or gross inequalities made by the assessor in the assessment of real or personal property within such assessment district. Gross inequality as used in this section shall be construed to mean: Where adjoining property of the same class is assessed at a much higher or lower amount * * * than personal property of the same class in the same assessment district. * * *"

We are, however, mindful that section 6724 makes a full and complete provision for the determination of and reviewing the listing and valuation of property as made by the assessor. It would therefore appear that section 6729, so far as relating to correction of alleged errors and in the listing and valuation of property, is purely complementary, and we are also mindful of the fact that section 6729 first became law in 1917, being House Bill No. 17, chapter 124 thereof. No repealing clause was expressed in its title excepting that section 2 thereof used the blanket repeal that "all acts and parts of acts in conflict with this act are hereby repealed." Did the Legislature, in passing said act, intend to deprive the local

or district board of equalization of its power to pass upon and equalize the taxes within their own district, and confer that upon the county equalization board, or did they intend thereby to confer the same power upon the county board of equalization which had been conferred upon the local or district board, or, in other words, did they intend to give the two boards concurrent powers and rights in determining the valuation of property for taxation purposes? It will be assumed that the Legislature had already conferred the ascertaining of the value of properties upon the assessor and the local or district board, such as the supervisors of a township, trustees of an incorporated town, and certain officials of a municipal corporation to act as an equalization board, for the reason that the local board was more familiar with valuations within the immediate vicinity and would therefore be in a better position to review the acts of the assessor and place the valuation upon the property.

 We do not understand that the county equalization board has the power to list properties and fix the valuation thereof unless the properties have actually, through error, been omitted. The term "gross inequality," as used in the section, we do not believe is applicable in the case at bar. The board of equalization of Rapid City, having reviewed the assessment in question and having equalized the valuation and having made its order, it became final unless appealed from. It is the height of folly to say that, after a board has taken jurisdiction and fixed valuations, another board can thereafter take jurisdiction over the same subject-matter and fix another valuation, and in the instant case there is nothing to show that any one appeared before the local board urging a higher valuation, nor was there any appeal or proceedings taken to change the results as fixed by the local equalization board of Rapid City.

Section 6724 is quite comprehensive, and deals quite completely with the equalization and valuation of property. After the local equalization board has acted, the clerk of such board delivers the assessment roll to the county auditor with this certificate, that the same is "correct as equalized by the board of equalization," and "the same shall be accepted by the board of county commissioners of such county in lieu of all other assessment rolls for such property in such township, town or city subject to equalization," is the mandate of section 6726.

Section 6727 provides that, if any person feels aggrieved, they may appeal from the decision of the board of equalization to the board of equalization of the county in which that city, town, or township is located. In the instant case the record discloses that the assessment roll was delivered to the county auditor with the proper certificate. The statute provides that the same shall be accepted by the board of county commissioners in lieu of all other assessment rolls of such property. The assessment roll having been completed, certified, and filed, and no one appealing from the city equalization board, it became final, and the county board of equalization could not take jurisdiction and change the assessment roll completed and filed by the equalization board of Rapid City. To hold otherwise would upset orderly procedure.

Construing the various sections as to the duties of the local and county board of equalization, we hold that it is the duty of the local and district board to review the acts of the assessor; that, when the local board has acted, made, and filed its report and order of its acts with the county auditor, it is final unless appealed from to the county board. The act of the county commissioners of Pennington county was without authority to fix a different valuation upon respondent's property.

The order and judgment appealed from are hereby affirmed.

POLLEY, P. J., concurs.

CAMPBELL, J., concurs specially.

RUDOLPH, J., not participating.

ROBERTS, J., disqualified.

CAMPBELL, J. (concurring specially). The authority of the county board of equalization with reference to equalization of assessments in districts having local boards of equalization is very different from the authority of the county board as to assessments in districts in unorganized territory having no local board of equalization. Where there is no local board of equalization, the proper functions of such local board are, in substance, intrusted to the county board by virtue of section 6730, Rev. Code 1919, and the county board is then authorized to raise or reduce valuations of realty and of each class or article of personal property. Under section 6729, Rev. Code 1919, when equalizing assessments that have already been equalized by local boards in the respective as-

sessment districts, the primary function of the county board is to equalize as between the assessment districts, and it is contemplated that changes made by the county board shall apply to a given class of property as a whole throughout an entire taxing district. The only authority of the county board with reference to individual assessments where there has been a previous equalization by a local board (and leaving to one side the question of appeals from the local board) is to place upon the books property omitted by error or neglect, and to "correct mistakes or gross inequalities made by the assessor in the assessment of real or personal property within such assessment district." There is no claim of mistake in the instant case, so the action attempted by the county board of equalization must be justified, if at all, under the "gross inequality" clause. The statute in this regard defines gross inequality as follows:

"Where adjoining property of the same class is assessed at a much higher or lower amount, according to its value, than other adjoining property in the same assessment district, or personal property of any class is assessed at a much higher or lower amount than personal propetry of the same class in the same assessment district."

I do not believe this portion of the statute authorizes the county board of equalization to take over the normal functions either of the assessor or of the local board of equalization. I think this portion of the statute refers to such "gross inequality" as is apparent from an inspection of the assessment roll. I think, to authorize a correction or change by the county board under section 6729 in an individual assessment of personalty, it must appear from the face of the assessment roll that the individual is assessed much more or much less than other individuals in the assessment district upon the same amount or number of items of property having a substantially equivalent value for taxing purposes. For instance, one of the classifications of personalty for taxation is "threshing machine separators." One used threshing machine separator is worth about as much as another when it comes to taxation, with perhaps some slight variation as to length of use. If practically all threshing machine separators in a given taxing district were valued by the assessor at approximately $500, but some one individual in that taxing district was assessed upon one threshing ma-

chine separator $100 or $3,000, I think there would be such a case of gross inequality as the county board might correct. But, in the case of an assessed valuation under the classification "goods and merchandise," the classification in itself does not afford any general units of equivalent values. No one can inspect an assessment roll and thereby determine any inequality between assessments of stocks of merchandise. No inequality appears by reason of the fact that one merchant may be assessed $1,000 and another $50,-000. The value of the stock of merchandise depends, of course, upon the number, quality, nature, and value of the unspecified items thereof. A county board of equalization may doubtless claim to perceive a gross inequality if "mules under two years old" are assessed to one or two individuals in a taxing district at $50 per head, and to all other individuals in such district at $1 per head, but no such inequality appears by reason of vastly divergent amounts assessed to different individuals under the item of "goods and merchandise." The propriety of such assessment depends in each case upon facts not apparent from the assessment roll. The duty of properly ascertaining those facts rests first with the assessor and then with the local board of equalization, and I do not think the county board is authorized to assume such duty.

Conceding that it may be true that respondent in the instant case should have been assessed much more than it was upon its stock of goods, nevertheless I think the learned trial judge was correct in holding that this case does not present a situation where the individual assessment can be changed by the county board of its own motion and without any action by, or appeal from, the local board of equalization.

I concur in the affirmance of the judgment.